The following constitutes
the order of the court. Signed April 27, 2015

Roger L. Efremsky
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| FAROUK E. NAKHUDA, | ) | Case No. 14-41156-RLE |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM DECISION RE ORDER TO SHOW CAUSE**

**I. INTRODUCTION**

On November 4, 2014, the court issued its Order to Show Cause directed at Andrew W. Shalaby, counsel for chapter 7 debtor Farouk E. Nakhuda (the "OSC"). Mr. Shalaby and the chapter 7 trustee (the "Trustee") both responded. On November 20, 2014, the court held a hearing on the OSC, asked for additional briefing, and then took the matter under submission. Based on the responses and the entire record in this case, the court now finds Mr. Shalaby will be sanctioned as explained below.

-1-

This should have been a routine chapter 7 case in which this debtor would have received a prompt discharge. The events that led to the issuance of the OSC arise from Mr. Shalaby's fundamental misunderstanding of basic principles of bankruptcy law and key provisions of the Bankruptcy Code and Bankruptcy Rules. He claimed his "good faith belief" or "opinion" supported every position he took in this case. However, his subjective intent is irrelevant; his conduct is measured against a reasonableness standard which consists of a competent attorney admitted to practice before this court. Ostrich-like, he refused to acknowledge controlling law and persisted in taking positions based solely on his belief or opinion. He thus strayed far from the normal boundaries of acceptable advocacy into the realm of sanctions.

**II. JURISDICTION**

This court has jurisdiction under 28 U.S.C. §§1334 and 157(b)(2)(A) and (E). These are the court's findings of fact and conclusions of law.[1]

**III. BACKGROUND**

To provide context for this decision, the court provides a brief history of the events that gave rise to this OSC.

**A. Skeletal Filing and Original Schedules**

Mr. Shalaby filed a skeletal chapter 7 case for the debtor on March 16, 2014. Docket no. 1. The petition listed no trade names for the debtor and indicated the debts were primarily consumer debts rather than business debts.[2]

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[2] As the schedules evolved over the next several months, it became apparent that the debts were not primarily consumer debts.

-2-

Mr. Shalaby filed the first version of the Schedules and Statement of Financial Affairs on March 31, 2014. Docket no. 7. Schedule A listed a house valued at $433,000 encumbered with secured debt of approximately $380,000. Schedule B listed personal property consisting of $600 in debtor's wallet; $4,000 in a checking account; and $211 in a Fidelity Investments account. Schedule B did not list any accounts receivable or interests in partnerships but did list certain office equipment valued at $900 and inventory of detergents and sodas valued at $300. Schedule C claimed a homestead exemption and an exemption in the office equipment, and inventory under California Code of Civil Procedure §704.760 (tools of the trade). Schedule I stated debtor was married with two adult children and was self-employed with $4,359 monthly net income from operating a business.

Question no. 18 in the Statement of Financial Affairs listed five laundromat businesses in San Francisco and Vallejo. Question no. 21 identified two of the laundromats as partnerships in which debtor owned a 50% interest and two as sole-proprietorships.[3]

**B. First Amended Schedules**

On April 10, 2014, Mr. Shalaby filed the first amendments to the Schedules. Docket no. 15. Schedule B listed the same cash and bank accounts and now listed a $15,000 account receivable.[4] Schedule B now listed debtor as the 50% owner of the Partnership Laundromats valued at $45,000 and added laundry machines valued at $437,485. The Sole-Proprietorship Laundromats were not listed.

Schedule C listed the same homestead exemption, and the same exemptions in the office equipment and inventory. It added an exemption valued at $0 for the Partnership Laundromats (erroneously referring to the section for motor vehicles).

---

[3] The two partnership laundromats will be referred to as the "Partnership Laundromats" and the two sole-proprietorship laundromats will be referred to as the "Sole-Proprietorship Laundromats." The fifth business had been closed pre-petition.

[4] The entity that owed the account receivable was later identified as Borismetrics.

-3-

Schedule D added a secured creditor owed $437,485 with a lien on the laundry machines.

**C. The Meeting of Creditors**

Before the meeting of creditors took place, Mr. Shalaby and the Trustee had exchanged emails. See Docket no. 20-1 (April 7, 2014 email from the Trustee to Mr. Shalaby asking about the laundromats' entity status and asking Mr. Shalaby to confirm that any sole-proprietorship businesses were not operating and that no estate property was being used; Mr. Shalaby replied that the Sole-Proprietorship Laundromats were still in business to which the Trustee replied that it was a fundamental principal of chapter 7 that the debtor could not operate a sole-proprietorship business while he was in chapter 7).

Despite this prior communication, when debtor appeared with Mr. Shalaby at the §341 meeting of creditors on April 16, 2014 ("the §341 meeting"), the debtor testified that he was still operating the Sole-Proprietorship and Partnership Laundromats. See Docket no. 178-1, Ex. A, p. 6 (transcript of §341 meeting). It is clear from this transcript that Mr. Shalaby did not understand the obligation to close the Sole-Proprietorship Laundromats, did not understand the absolute prohibition on using estate assets post-petition, and had not told the debtor that closing was required. When the Trustee's counsel advised the debtor he could not continue to use business income to pay rent to the landlords and could not operate the businesses, Mr. Shalaby interjected "I am not sure you are right about that ... it is not so black and white." He also asked the Trustee to provide him with authority for this position and give him an opportunity to respond. Docket no. 178-1, Ex. A, p. 16-17, p. 28.[5]

---

[5] Mr. Shalaby repeatedly requested the Trustee to provide him with authority that contradicted his "beliefs" on key issues. See Docket no. 74-3, Ex. H. In response to the OSC, he made the same request to the court.

-4-

**D. The Turnover Order**

On April 17, 2014, the Trustee filed an Ex Parte Application to Cease Debtor's Operations and Turnover Non-Exempt Funds and Records. Docket no. 20. The application was supported by a declaration of the Trustee's counsel describing the debtor's post-petition use of estate assets and continued operation of the Sole Proprietorship Laundromats.

The court promptly signed an order granting the application (the "Turnover Order"). Docket no. 21. The Turnover Order required debtor to (1) turnover all of his bank account proceeds; (2) shut down the Sole-Proprietorship Laundromats and give the keys to the Trustee; (3) stop using estate assets for the operation of any business; and (4) provide the Trustee with bank records for all post-petition activity.

**E. Attacking the Turnover Order**

Mr. Shalaby devoted a significant amount of time and effort to objecting to the Turnover Order. On April 17, 2014 he filed an Ex Parte Application for Briefing and Hearing Schedule for Motion to Remove Trustee and Motion to Set Aside 'Turn-Over Order' or Direct Turn-Over to New Trustee. Docket no. 22. This application complained that the Trustee should be removed because of the way he had conducted the §341 meeting and the Turnover Order suffered from a "due process problem" because it had been granted without debtor being given an opportunity to "present the true facts" in opposition to the "drastic relief" sought by the Trustee. It suggested an immediate "interim measure" through which a new trustee would be appointed and directed to pay the basic minimal expenses and necessities required to keep the businesses in operation pending briefing on the application. The court denied this application on April 18, 2014. Docket no. 24.

On April 21, Mr. Shalaby filed an Ex Parte Application to Set Aside Turnover Order for Failure to Notice Hearing. Docket no. 28. This application argued that the Turnover Order was issued in violation of the 5th and 14th amendments and the "laundry machines that are not exempted as tools of the trade are secured by liens and there is no equity" and the "two businesses

–5–

themselves are upside-down with secured liens. It appears they are exempted." Docket no. 28, p. 2. Like its predecessor, this application did not cite the Bankruptcy Code or any relevant case law. The court denied this application on April 22, 2014. Docket no. 34.

Later on April 21, Mr. Shalaby filed an Amended Ex Parte Application to Set Aside Turn-over Order for Failure to Notice Hearing. Docket no. 31. This amended application again argued that the Turnover Order had been issued in violation of the 5th and 14th amendments and repeated the claim that "the business entities" appeared to be exempt and shutting them down would cause harm.

In Mr. Shalaby's own words:

> Even if laws do in fact exist that mandate the closure of a business upon filing of a Chapter 7, there is a fundamental due process violation insofar as there is no notice given to the debtor of any such law in existence. Even to the extent that if such a law should exist, ignorance of the law is no excuse, the debtor would still be entitled to challenge any such law under the 5th Amendment or otherwise if he believes it to be unconstitutional. The point is, however, that the debtor has been entirely deprived of any and all opportunity to respond to the trustee's application.

Docket no. 31, p. 3:11-20.

In connection with this amended application, Mr. Shalaby filed a Notice of Ex Parte Motion and Motion to Set Aside Turn-over Order for Failure to Notice Hearing which purported to give notice that a hearing would be held two days later. Docket no. 32.[6]

On April 22, Mr. Shalaby filed a Second Amended Ex Parte Application to Set Aside Turnover Order for Failure to Notice Hearing. Docket no. 33. This second amended application repeated the previous arguments and proposed that the court amend its Bankruptcy Local Rule 9014-1 to provide for hearings to be set on ex parte matters.

---

[6] Mr. Shalaby did not upload an order on this application or on the second amended application.

-6-

On April 24, Mr. Shalaby filed a Notice of Appeal, purporting to appeal the Turnover Order (Docket no. 21), the order denying his request to stay the Turnover Order (Docket no. 24), and the order denying his request to set aside the Turnover Order (Docket no. 34). Docket no. 39.[7] Inexplicably, on the same day that Mr. Shalaby filed his designation of the record on appeal, he filed another document entitled Objection to Turnover Motion. Docket no. 40. This objection repeated his prior arguments and again requested that the court hold a hearing on the turnover issue.[8]

**F. Second Amended Schedules**

Between April 10 and April 25, 2014, Mr. Shalaby filed several amendments to the Schedules, each apparently aimed at making it appear that the debtor had no unencumbered assets because this appears to have been the factual predicate for many of his misunderstandings regarding the concepts of property of the estate and exemptions. Docket nos. 29, 30, 46.

**G. Third Amended Schedules**

On May 6, 2014, Mr. Shalaby again filed amended Schedules B and C. Docket no. 58. He also filed a Motion for Return of Exempted Property and Removal of Trustee and a Notice of Hearing to take place on June 4, 2014. Docket nos. 59-60.

This version of Schedule B listed the same cash, bank accounts, account receivable, and the Partnership Laundromats. This Schedule C claimed the same exemptions in the office equipment and inventory, and added an exemption in $3,719 in the

---

[7] See B.A.P. case no. 14-1235. The Bankruptcy Appellate Panel heard argument on the appeal on February 19, 2015 and on February 20, Mr. Shalaby filed a motion to dismiss it which the Appellate Panel denied; he also filed a motion for rehearing which was denied. On March 2, 2015, the Bankruptcy Appellate Panel affirmed.

[8] Mr. Shalaby did not upload an order on this objection and it was not set for hearing.

-7-

checking account, as tools of the trade. It also claimed the Partnership Laundromats exempt, valuing the exemption at $0 under California Code of Civil Procedure §704.010 (motor vehicles). It did not exempt the account receivable or the $600 cash in the debtor's wallet.

On May 7, 2014, the Trustee filed an Objection to this version of Schedule C on the grounds that (1) money in a checking account does not qualify as a tool of the trade under California Code of Civil Procedure §704.060; (2) that the $0 exemption in the Partnership Laundromats was an admission that there was no claim of exemption in these; and (3) the entire Schedule C was objectionable because it had not been signed by the debtor. Docket no. 61.

On May 9, 2014, Mr. Shalaby filed a response to the objection, arguing that the Trustee could not meet his burden of proof because the money in the checking account was exempt as a matter of law under California Code of Civil Procedure §704.060 and was also exempt as income earned pre-petition. Docket no. 67. He also claimed that debtor's non-filing spouse owned 50% of the funds in question, thus reducing the amount that was property of the estate from $3,719 to $1,859.[9] He also argued that the funds had already been paid to a creditor named Sean Shafiq who had decided to interplead them because "in fact those funds are exempted by law." Docket no. 67, p. 2.[10]

_____

[9] A debtor's schedules are required to list community property assets at full value. <u>Dumas v. Mantle (In re Mantle)</u>, 153 F.3d 1082 (9th Cir. 1998); <u>In re Gonzalez</u>, 302 B.R. 687 (Bankr. C.D. Cal. 2003).

[10] Sean Shafiq was listed on Schedule F as an unsecured creditor. Pre-petition, debtor wrote a $5,000 check to Shafiq which cleared post-petition. Mr. Shalaby has insisted that the $3,719 in the bank account on the petition date was used to pay Shafiq so if it were recovered from Shafiq and the debtor there would be a double payment. He has also insisted that the debtor made post-petition deposits into this account so the funds transferred to Shafiq were not recoverable by the Trustee because they were in fact the post-petition earnings of the debtor. Docket no. 74-3, Ex. F, p. 11-13. The Trustee sued (continued)

–8–

**H. Motion for Return of Exempted Property and Removal of Trustee**

On May 6, 2014, Mr. Shalaby filed yet another Motion for Return of Exempted Property and Removal of Trustee by which the debtor sought the return of all exempted property held by the Trustee because "exempted property does not belong to the Trustee." Docket no. 59. It was supported by Mr. Shalaby's declaration accusing the Trustee and his counsel of acting with "extreme malice and bad faith" in taking over assets which Mr. Shalaby believed were exempt as a matter of law. Docket no. 59-3, p. 2. The motion sought the "return" of the Sole-Proprietorship Laundromats and the "working capital or other exempted funds."[11]

The motion claimed that the Trustee would be unable to meet his burden of proof under Bankruptcy Rule 4003(c) as to the Sole-Proprietorship Laundromats because the Trustee had stipulated to return one to the landlord and the other had "negative value."

The motion asserted:

> [I]n light of the senseless closure of debtor's two laundromats and continued refusal to work with the debtor and his counsel in good faith to perform those tasks which are necessary and proper to bring this bankruptcy to conclusion, this debtor and his counsel have no choice but to file this motion for return of debtor's exempted assets and for removal of the trustee.

Docket no. 59-1, p. 2:17-21.

After referring to Rule 9011, the Motion claimed that:

> The debtor and his counsel do not purport to know the law better than the trustee or his counsel, court, or otherwise, but laws must make sense. If the laws at issue should be as the trustee and his counsel have represented to the debtor, his counsel, and the court, then those are nonsensical and illogical, and relief should be afforded. Of particular concern are *allegations* of the trustee and his

Shafiq (AP 14-4054) and, after a brief interval during which Mr. Shalaby represented Shafiq, recovered the $5,000 from Shafiq. Mr. Shalaby returns to this Shafiq issue repeatedly.

[11] The funds in question had not been paid to the Trustee as of March 2015. Docket no. 248. The $2,741 from Borismetrics was delivered to the Trustee in October 2014 according to Docket no. 178, Ex. O. Thus, asking for their "return" was thus nonsensical.

–9–

counsel that in a Chapter 7, the trustee has the freedom, ability, and Court's blessing to take a debtor's exempted property business venture, close it down, put the employees out of work, hurt the landlord by causing the rent to cease, hurt the creditors by terminating income to pay on their loans, then surrender the property (lease) to the landlord in an unlawful detainer. *There simply can be no such law allowing for such conduct. To the extent that the trustee insists there is, the trustee should have presented points and authorities to the debtor in response to his exhaustive meet and confer efforts prior to the filing of this motion.*

Docket no. 59-1, p. 3:2-16 (emphasis added).

It continued:

Exempted assets do not transfer to the trustee. They simply do not belong to the trustee, and the debtor may retain possession. 11 U.S.C. § 542. The trustee should never have moved for possession and closure of this facility because he never had ownership and control over it, and he never had ownership and control because it had no positive cash value.

Docket no. 59-1, p. 5:10-14.

With a glancing reference to Bankruptcy Code §324, the motion also argued that there was cause to remove the Trustee because the Trustee and his counsel had been abusive to the debtor and Mr. Shalaby at the §341 meeting, and because "the Trustee had no right of ownership or control over these facilities because they were exempted, and because their value to the estate was inconsequential." Docket no. 59-1, p. 7.

The Trustee opposed the motion stating that the debtor had not yet complied with the Turnover Order other than to provide the keys to the Sole Proprietorship Laundromats. Docket no. 74. Mr. Shalaby replied to the Trustee's opposition. Docket no. 77. In his reply, he withdrew as "moot" the part of the motion requesting a return of the cash in the checking account and the Sole-Proprietorship Laundromats. However, he withdrew this reply two days later (Docket no. 80) and then filed another document entitled Withdrawal of Moot Portions of Motion and Reply to Opposition to Motion to Remove Trustee, supporting it with declarations of Mr. Shalaby and the debtor. Docket no. 82. This reply again complained about the §341 meeting ("perceived illegal and retaliatory" conduct) but largely failed to respond to the

-10-

legal analysis provided by the Trustee's opposition. The day before the June 4 hearing, Mr. Shalaby withdrew this motion in its entirety. Docket no. 96.

**I. Fourth Amended Schedules**

On June 2, 2014, Mr. Shalaby again filed amendments to Schedules B and C. Docket no. 91. This version of Schedule B listed the same cash, checking account, and account receivable. It added the Sole-Proprietorship Laundromats with an "unknown" value. This Schedule C again exempted as tools of the trade the office equipment, inventory, the $3,719 in the checking account, and – for the first time – the $600 cash in debtor's wallet. It also added an exemption based on California Code of Civil Procedure §706.050 (exempt earnings) for the Borismetrics account receivable. However, the values in this version of Schedule B and C were cut in half under the theory that not all community property was property of the estate. Thus, for example, the checking account balance became $1,971 and the account receivable became $7,350.

On June 3, the Trustee filed an Amended Objection to Debtor's Claim of Exemptions. Docket no. 94. It incorporated the prior objection at Docket no. 61. The Trustee argued that the asset described in this version of Schedule C as exempt earnings had previously been listed on Schedule B as an account receivable. The Trustee contended it was not exemptible earnings under California Code of Civil Procedure §706.050, and cutting the amounts in half violated Bankruptcy Code §541(a)(2).

**J. Fifth Amended Schedules**

On June 12, 2014, Mr. Shalaby filed yet another version of Schedules B and C. Docket no. 101. The only difference between the Schedule C at Docket no. 91 and this Schedule C was an increase from $7,350 to $8,930 for the claimed exemptible earnings based on the Borismetrics account receivable.

On July 10, 2014, the Trustee filed an objection to this Schedule C. Docket no. 118. It incorporated the prior objections (i.e., Docket nos. 61 and 94) and said debtor "continues to claim

-11-

a portion of his bank account proceeds exempt under California Code of Civil Procedure §704.060 [sic] but has increased the amount of exemption from $7,350 to $8,930. The Trustee objects to said amended claim of exemption on the ground that it has no factual or legal basis as a claim of exemption in debtor's bank account proceeds." Docket no. 118, p. 1.[12]

## K. Status Conference on Exemption and Turnover Issues

On July 22, 2014, the Trustee filed a Memorandum of Points and Authorities in Support of Notice of Status Conference Regarding Objections to Claims of Exemption and Request for Turnover of Assets (the "July Motion"). Docket no. 124. He also filed a Notice setting a hearing for September 3, 2014. Docket no. 126. The July Motion was supported by Trustee's counsel's declaration attaching excerpts from the debtor's deposition and related exhibits. Docket nos. 124-126. The July Motion demanded the turnover of five listed sums of cash which debtor had, on advice of Mr. Shalaby, refused to turnover ($600 cash in wallet, $3.12 savings account, $3,719 checking account, $2,741 paid post-petition by Borismetrics, and $211 Fidelity account - for a total of $7,274.41). It also restated the Trustee's objections to the claimed exemptions. The Trustee's memorandum explained the relevant facts and his legal analysis of the turnover issues and the exemption issues.

The Trustee argued that the debtor's claim of exemption in the $8,930 "exempt earnings" under California Code of Civil Procedure §706.050 was incorrect as a matter of law.[13] At his

---

[12] It appears the Trustee intended to refer to this $8,930 as exempt earnings under Cal. Code Civ. Proc. §706.050 rather than bank account proceeds under Cal. Code Civ. Proc. §704.060 because Cal. Code Civ. Proc. §706.050 is the section referred to for exempting the $8,930 in this version of Schedule C.

[13] Cal. Code Civ. Proc. §706.050 provides an exemption for "disposable earnings" that are "subject to levy under an earnings withholding order." An "earnings withholding order" can only issue to an "employer." Cal. Code Civ. Proc. §706.108. "Earnings" means "compensation payable by an employer to an (continued)

-12-

deposition, the debtor had testified "I was on a contract basis with a company called Borismetrics, a consulting company ... I was hired ... as a consultant, not on a full-time permanent basis but on a consulting contract ... with a 1099 and not withholding taxes and not a permanent employee." Docket no. 124-2, Ex. A, p. 9-10.[14] The Trustee further argued that this sum had been identified as an account receivable until the Trustee had tried to collect it.[15]

The Trustee also argued that funds in a bank account could not be exempt as a tool of the trade as a matter of law. The Trustee cited C.F. Nielsen, Inc. v. Stern, 11 Cal. App. 4th Supp. 22 (1992) in support of this proposition.[16]

The day before the hearing on the July Motion, Mr. Shalaby filed an Opposition and Objection to Procedurally Defective 'Motion.' Docket no. 138. This described the July Motion as procedurally defective because it lacked a notice conforming to Bankruptcy Rules 9013 or 9014 and claimed this meant the hearing could not go forward. Because the court wanted to afford the parties an opportunity to address whether the pending appeal of the Turnover Order precluded a ruling on all or part of the July Motion, the court continued the hearing to October 1, 2014 and set a briefing schedule regarding the pending appeal affected the

_____

employee for personal services. Cal. Code Civ. Proc. §706.011(b).

[14] The debtor had also testified to this at the §341 meeting. Docket no. 178, Ex. A, p. 8.

[15] See Mr. Shalaby's response to the Trustee's request for contact information for the account receivable: "your request is respectfully denied, but will be reconsidered if you can explain why you want this information." Docket no. 74-3, p. 16.

[16] Mr. Shalaby makes much of the fact that the citation to this case was incomplete, insisting he could not locate the case on Westlaw. However, he had cited it in an earlier filing (Docket no. 82) and the court notes that Westlaw immediately (continued) produced the case using the obvious search term "Nielsen, Inc. v. Stern."

-13-

court's jurisdiction. The court also allowed Mr. Shalaby an opportunity to file a brief regarding the validity of his claimed exemptions.

**L. Further Briefing on the Exemption Issues**

On September 10, 2014, Mr. Shalaby filed his brief on the merits of the exemption issues, supported by declarations of Mr. Nakhuda and Mr. Shalaby. Docket no. 143.

Mr. Shalaby argued that the Trustee had not met his burden of proof that his objection was timely and even if it had been timely, the Trustee had failed to meet his burden of proof because he had not alleged that the "debtor has exceeded his maximum allowable income with the payment of the $17,861 in issue."[17] Mr. Shalaby asked the court to "direct the Trustee" to return this amount to the debtor.[18]

Mr. Shalaby also claimed - without providing any factual or legal support - that it was correct to cut the amount of the Borismetrics account receivable to $8,930 to reflect the debtor's non-filing spouse's community property share under California Family Code §760.[19] He failed to explain how this Family Code section applied or to acknowledge Bankruptcy Code §541(a)(2) or the binding authority interpreting it. Further, he offered no explanation as to why §541(a)(2) did not control.

_____

[17] This reference to "maximum allowable income" is unclear.

[18] Borismetrics paid debtor the $17,861 and debtor turned it over to the Trustee in June 2014. Docket no. 178, Ex. O.

[19] California Family Code §760 provides that "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." The section creates a rebuttable presumption that all property acquired during marriage is community property. Dumas v. Mantle (In re Mantle), 153 F.3d 1082, 1085 (9th Cir. 1998) (for purposes of §541(a)(2), all community property not yet divided by a state court at the time of bankruptcy filing is property of the estate).

-14-

Mr. Shalaby contended that the amended Schedule C filed at Docket no. 101 had corrected what had previously been classified as an account receivable to show that it was exempt as wages under California Code of Civil Procedure §706.050. Mr. Shalaby failed to address debtor's prior testimony that debtor was not an employee of Borismetrics.[20]

Mr. Shalaby next argued that the Trustee's objection to the exemption in the checking account as a tool of the trade had failed to "present any facts or identify any assets in dispute." In fact, the July Motion referred to what was then the most recent version of Schedule C (claiming an exemption for half of the $3,719 balance in the checking account as a tool of the trade) and clearly stated the legal basis for the objection.

Not content with these issues, Mr. Shalaby introduced a new one regarding the debtor's unchallenged $100,000 homestead exemption. In July, the court entered an order approving the estate's compromise with the debtor through which the debtor had paid $30,000 to purchase the non-exempt equity in his house from the estate (the "Sale Order"). Docket no. 128. Mr. Shalaby now argued that the Sale Order should be vacated "in the interest of justice" because - months after the fact - he had obtained an appraisal from which he had concluded that the house was worth less than the Trustee's broker had said it was worth.[21] He asked the court to enter an order directing the Trustee to return this $30,000 (plus a $600 appraisal fee) to the debtor.

In his brief that was supposed to focus on whether the pending appeal affected the court's jurisdiction, Mr. Shalaby again argued that the Trustee's objections were untimely because the exemptions had been claimed on June 12 and the July Motion

---

[20] Mr. Shalaby offered documents intended to support his position but none of them were relevant to the central issue of whether debtor was a consultant or an employee. See Docket no. 143, Ex. C-F regarding payments from Borismetrics.

[21] He also returned to the Shafiq issue, arguing that part of the turnover request was "moot" because the Trustee had collected $5,000 of the $7,274.41 in issue from Shafiq.

-15-

had not been filed until July 22. Docket no. 147. Mr. Shalaby contended that filing an objection was insufficient to meet the 30-day deadline in Rule 4003(b) and a motion was required.[22] He also claimed that Bankruptcy Code §542(a) supported his position because the $600 cash in wallet, $3.12 savings account, and $211 Fidelity Investments account were "facially insignificant" and the estate would get nothing from turnover of these items whether they are exempt or not.

The Trustee also filed a supplemental brief on the merits of the exemptions. Docket no. 146. The Trustee largely repeated his prior arguments and pointed out that the debtor had agreed to the compromise embodied in the Sale Order and this belated attack on it was procedurally and substantively inappropriate.

In his brief on the jurisdictional question, the Trustee acknowledged that the Turnover Order covered the $3.12 savings account balance and the $3,719 checking account balance; he suggested that the court hold the debtor in contempt for failing to obey the Turnover Order because it was not stayed on appeal. Docket no. 145. The Trustee pointed out that the $600 in cash, the $2,714 account receivable paid post-petition by Borismetrics, and the $211.29 in the Fidelity account were not covered by the Turnover Order and urged the court to enter an order requiring the turnover of these three items.

**M. October 1, 2014 Hearing and Ruling on Exemptions**

At the hearing on October 1, 2014, the court explained its reasoning, giving the basis for its conclusions that the

_____

[22] Mr. Shalaby cited <u>Canino v. Bleau (In re Canino)</u>, 185 B.R. 584 (9th Cir. B.A.P. 1995) for the proposition that there is a strict 30-day deadline to object to exemptions. <u>Canino</u> dealt with whether a trustee's explicit actions within the thirty-day objection period could amount to an "informal objection" under Rule 4003(b). The court said since Rule 4003 does not provide for a formal objection, it was illogical that there could be an informal objection and §105(a) could not be used to create one. The case offers no support for the contention that a motion is required rather than the sort of objections filed by the Trustee in this case.

-16-

Trustee's objections to the claimed exemptions were all
sustained. The court also denied debtor's belated attack on the
Sale Order, and ordered the debtor to deliver to the Trustee
within ten days the $600 in cash, the $2,741 collected from
Borismetrics post-petition, and the $211.29.[23] The court also
indicated it intended to issue an order to show cause directed at
Mr. Shalaby for the positions he had taken during the case. The
court then issued an order ruling on the exemption issues (the
"October 2 Order"). Docket no. 152.

The day after this hearing, Mr. Shalaby filed a request
that the court order a settlement conference. Docket no. 151. In
a fleeting moment of candor, he confessed: "Unfortunately, I must
agree with the court, largely, that with a bit more effort and
legal research, many of the problems and matters disputed could
have and would have been avoided." Docket no. 151, p. 2:7-10. He
then quoted Rule 9011(b) and said "while a matter may explain the
reason I admittedly failed to diligently research some of my
legal contentions and presented incorrect interpretations of
applicable law (e.g. community property interest being irrelevant
to exemptions, misapplication of 11 U.S.C. §542(a), and other
matters), that matter is quite personal and difficult to disclose
on the record and/or in pleadings on an OSC hearing." Docket no.
151, p. 2:15-20. It went on to state "I do in fact recognize my
mistakes, and appreciate the court's frustration." Docket no.
151, p. 2:26-28. He suggested that the "practical thing" to do
was to try to "settle the OSC/sanction by negotiating a
reasonable payment to the trustee." Docket no. 151, p. 3:1-5. The
court declined to order a settlement conference. Docket no. 154.

**N. The Order to Show Cause**

On November 4, 2014, the court issued the OSC. Docket no.
165. The OSC describes seven specific factual and legal positions
taken by Mr. Shalaby in connection with the issues that
culminated in the October 1 hearing: (1) he argued that the

---

[23] The $2,741, $600, and $211 were paid to the Trustee in
late October 2014. Docket no. 178, Ex. O.

-17-

Trustee's objections to exemptions were not timely; (2) he argued that the value of assets was reduced by 50% as non-estate property ignoring §541(a)(2); (3) he reclassified the Borismetrics account receivable as exemptible wages without factual or legal support; (4) he argued that the Trustee's objections had not identified any assets in dispute; (5) he argued that a bank account was exempt as a tool of the trade; (6) he attacked the Sale Order; and (7) he argued the debtor had no obligation to turn over assets based on his assertion that the scheduled values were inconsequential.

The OSC asked Mr. Shalaby to appear and show cause why he should not be required to disgorge the fees he had been paid or should not be otherwise sanctioned for his conduct in the case. Based on the seven illustrative factual and legal positions he had taken, the specific violations described in the OSC were: (1) making arguments not warranted by existing law or non-frivolous arguments for its extension, modification or reversal; (2) failing to ensure that allegations and factual contentions had evidentiary support; (3) his inability or unwillingness to obtain the most basic knowledge of bankruptcy law or engage in the legal analysis necessary to competently represent the debtor; (4) harming the estate by forcing the Trustee to use limited estate assets to respond to the frivolous arguments and positions; and (5) failing to obtain original signatures on documents filed with the court. The authority for issuance of the OSC was identified as the court's inherent powers and Bankruptcy Code §105, §329(b), Rule 9011(b) and (c) and paragraphs 8 and 9 of the Electronic Case Filing Procedures for this court.

**O. Mr. Shalaby's Initial Response to the OSC**

Immediately after the court issued the OSC, Mr. Shalaby filed an Ex Parte Application for Order Directing Disgorgement in Discharge of the OSC. Docket no. 168. In another fleeting moment of apparent candor and regret, he claimed he was "very sorry that the bankruptcy has gone so awry" and repeated the claim that "personal matters" which he was not comfortable putting on the record justified what had happened in this case. He offered to

-18-

Case: 14-41156   Doc# 263   Filed: 04/27/15   Entered: 04/27/15 14:12:18   Page 18 of 49

disgorge the $4,000 fee he had been paid as a complete resolution of the OSC. Without irony, he also offered to obey the Turnover Order if it was affirmed on appeal.

The Trustee objected to this suggestion on the grounds that the evidence would show that the damages to the estate were in excess of $30,000. Docket no. 169. In response, Mr. Shalaby contended that the Trustee was not a proper party to the OSC and could have made use of the safe-harbor provisions of Rule 9011(c)(1)(A) and provided him with authority showing his positions lacked merit. Docket no. 170. Mr. Shalaby also claimed the amount of time reasonably expended by the Trustee's counsel in responding to the issues raised in the OSC could not have exceeded $2,000. From this, he urged the court to accept his "good faith offer of reconciliation" with the $4,000 payment as full resolution of the OSC. Docket no. 170. The court declined this offer. Docket no. 174.

**P. Mr. Shalaby's Second Response to the OSC**

When it became apparent that offering to disgorge $4,000 would not discharge the OSC, Mr. Shalaby responded to the merits, supported by his declarations and a declaration of the debtor. Docket nos. 176, 182-184. He argued that sanctions were inappropriate under Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990) because he still believed the problems in the case stemmed "from a good faith disagreement in interpretation" of relevant law and imposing sanctions would chill his First Amendment right to petition for redress. Mr. Shalaby insisted that every argument and position he took in the case was based on what he believed was "a matter of logic" and his "good faith belief" that he was correct on each point or because he disagreed with the court's interpretation of the law. From this starting point, he reargued every issue decided in the prior hearing on the merits of the exemptions. In short, Mr. Shalaby advocated the positions he had taken earlier in the case but again failed to offer any support for them other than his "good faith belief" or "opinion."
//
//

-19-

First, Mr. Shalaby restated his position that the court should not have proceeded with the October 1 hearing because the Trustee's notice of the September 3 hearing was defective.

Second, Mr. Shalaby claimed that the court should have ruled in debtor's favor on the exemptions because the Trustee's objections were "not sufficiently informative" to serve as competent objections complying with Rule 4003(c).

Third, he reargued his claim that Bankruptcy Code §541(a)(2) did not prevent him from taking the position that the non-filing spouse's community property share of non-exempt assets was not property of the estate and the court should have held a trial on this issue.[24]

Fourth, as to the claim that the Borismetrics payments were exemptible wages, Mr. Shalaby claimed - for the first time - that he wanted to have a trial and introduce evidence regarding this dispute.

Fifth, Mr. Shalaby still insisted the Trustee had not identified assets in dispute and that a comparison of Docket nos. 118 and 124 would show that the Trustee had not objected to his claims of exemption.

Sixth, he reargued his position that the tools of the trade exemption under California Code of Civil Procedure §704.060 applied to funds in a bank account. Mr. Shalaby repeated his claim that the citation to C.F. Nielsen in the Trustee's July Motion was incomplete and he could not locate the case despite the fact that he had cited it himself. The debtor's declaration (again used to make an argument on this point) claimed it was his good faith belief based on common sense that the funds in the bank were exemptible as tools of the trade because the debtor had used the money post-petition in the operation of the Laundromats. Docket no. 183.

---

[24] "This counsel does not *believe* that it is proper to treat community property funds of six months pre-petition as community property funds yet a second time post-petition as to her now separate community property share that vested six months pre-petition." Docket no. 176, p. 8:22-24 (emphasis added).

-20-

Seventh, as to the effort to renegotiate the debtor's purchase of his non-exempt equity in the house, Mr. Shalaby claimed to have a "good faith belief that a trustee is not allowed to collect money or property from a debtor based on an artificially high valuation" and the Sale Order did not contain any language barring the debtor from "petitioning for review of the valuation prior to final distribution." In addition, because the Trustee had not presented Mr. Shalaby with any contrary authority, he was entitled to take this position. Docket no. 176, p. 11-12.

Eighth, Mr. Shalaby restated his "understanding" of Bankruptcy Code §521 and §542 as justification for his advice to the debtor that he did not have to turn over assets to the Trustee. Mr. Shalaby insisted that because he had never been presented with any authority showing that a noticed motion was required to make a finding of inconsequential value, he was correct to maintain his "belief" that "as a matter of logic, a property that has very low value, or a negative value, is not an asset of the estate due to the lack of value." Docket no. 176, p. 13.

**Q. The Trustee's Response to the OSC**

The Trustee responded to the OSC with the declaration of his counsel Dennis Davis. Docket no. 178. The exhibits to this declaration included the transcript of the §341 meeting; an excerpt from the debtor's deposition; an email from Mr. Shalaby stating that he did not personally prepare any part of the debtor's initial filing because he was too busy; an email stating his position that assets listed as having negative or inconsequential value were automatically exempt and the Trustee had no right to them; a spreadsheet supplied by the debtor regarding his post-petition use of estate funds; a letter Mr. Shalaby sent to Shafiq's attorney suggesting Shafiq sue the Trustee in state court; an email threatening to sue the Trustee for damages unless the debtor was paid $75,000; and an email threatening to do everything "humanly possible" to "stop" the Trustee's counsel; an email refusing to identify Borismetrics as

-21-

the party owing the scheduled account receivable. It also included time records reflecting fees incurred as of November 10, 2014 of almost $53,000, the vast majority of which were due to dealing with Mr. Shalaby's "frivolous positions" and his efforts to remove the Trustee.

Mr. Shalaby filed an objection to this declaration. Docket no. 179. The objection argued that every matter in the declaration was a privileged First Amendment communication under California Civil Code §47 and the declaration was the "equivalent of a SLAPP suit" under California Code of Civil Procedure §425.16.[25] Docket no. 179, p. 2.

Mr. Shalaby also contended that Mr. Davis's declaration was "an undisguised attempt to circumvent the safe harbor provisions" of Rule 9011(c)(1)(A) and asked the court to impose a mandatory or discretionary fee award in his favor under either California Code of Civil Procedure §425.16 or Rule 9011(c)(1)(A). Even though he had not moved to strike the declaration, Mr. Shalaby submitted an order striking the declaration which the court denied. Docket no. 221.

**R. The Hearing on the OSC**

On November 20, 2014, the court held a hearing on the OSC. Mr. Shalaby and the debtor appeared as did the Trustee and his counsel. Mr. Shalaby again defended his actions in the case.

At the conclusion of the hearing, the court asked the Trustee's counsel to file a supplemental declaration regarding attorney's fees, limiting the fees to the issues identified in

---

[25] Cal. Civ. Code §47 is California's litigation privilege statute. It does not apply in this context. Religious Technology Center v. Wollersheim, 971 F.2d 364, 367 n. 10 (1992). Cal. Code Civ. Proc. §425.16 is California's "anti-SLAPP statute." It does not apply in this context either. Restaino v. Bah (In re Bah), 321 B.R. 41, 46 (9th Cir. B.A.P. 2005). Raising these issues at this point is frivolous in and of itself. Mr. Shalaby is no stranger to anti-SLAPP litigation. See, Shalaby v. Jacobowitz, 138 Fed. Appx. 10 (9th Cir. 2005); Shalaby v. Freedman, 138 Fed. Appx. 897 (9th Cir. 2005); Shalaby v. State of California, 132 Fed. Appx. 720 (9th Cir. 2005).

-22-

1   the OSC and gave Mr. Shalaby an opportunity to respond to the fee
2   statement. The matter was then deemed submitted.

3   **S. The Trustee's Attorneys' Fees and the Motion to Recuse**

4       The Trustee's counsel filed a declaration showing total fees
    and expenses of $58,679.89 through December 8, 2014. Docket no.
5   208. However, as instructed by the court, the declaration
6   explained that the fees attributable to dealing with the issues
7   outlined in the OSC were $14,231.50.

8       A few days after this declaration was filed, Mr. Shalaby
9   filed a motion for judicial recusal, claiming a lack of
    impartiality. Docket nos. 214-217. The evidence of this lack of
10  impartiality was Mr. Shalaby's claim that he had played the audio
11  of the OSC hearing to 30 people and every one of them believed
    the court was not impartial and was biased in favor of the
12  Trustee's attorney. Mr. Shalaby also explained that it was his
13  opinion and belief that the "court's belief" as to procedures,
    turnover, and lease "abandonment" are "illogical and injurious"
14  to all. He argued (in his declaration):

15

16          It is *my opinion and belief* that the proper procedures for a
            trustee to follow with regard to a debtor's businesses is to
17          read notice of the existence and nature of the businesses
            timely provided to him ..., and either instruct an orderly
18          and safe turnover to enable continued viability of valuable
            businesses, or immediately terminate them as he did in this
19          case. In fact, if the businesses have no value and/or are of
            inconsequential value, the trustee need not even file a
20          motion to abandon. He can simply file a notice that he has
            elected not to demand turnover and that the business is of
21          inconsequential value under 11 U.S.C. §541(a). These are *my*
            *opinions as to what should be done* in such matters in the
22          future [and] should have been done by Mr. Mansdorf in this
            case.
23
    Docket no. 217, p. 6 (emphasis added).
24      On December 30, 2014, Mr. Shalaby filed a request for a
25  status conference on his recusal motion because he wanted an
    "update" on the reassignment to a new judge. Docket no. 222. This
26  request was denied. Docket no. 223. The court subsequently denied
27  the recusal motion. Docket no. 226.

28

                                    -23-

**T. Mr. Shalaby's Response to the Trustee's Attorneys' Fees**

Mr. Shalaby responded to the Trustee's attorneys' fee statement. Docket nos. 218-220. His response was, in essence, that the court had no basis to sanction him under Rule 9011, Bankruptcy Code §105 or §329 because he had an "absolute privilege" under California Civil Code §47 and California Code of Civil Procedure §425.16 to have done what he did. He accused the Trustee's attorney of making "untruths" to the United States Trustee and to the court and accused the court of repeating these "false allegations" in the OSC because the "debtor never refused to turn over assets as alleged" and because Mr. Shalaby "never told him not to turn over anything." Docket no. 218, p.7-8.[26] He objected to the Trustee's attorneys' fees on various grounds. Docket no. 219. He also filed a declaration attaching a billing statement for $11,231.50 which he may or may not have presented to the debtor from which he argued that because he had incurred fees that greatly exceeded the $4,000 he had initially been paid for the case, disgorgement under Bankruptcy Code §329 was not available. Docket no. 220.

**IV. DISCUSSION**

**A. The Bankruptcy Court's Authority to Sanction**

Bankruptcy courts have inherent authority to regulate the practice of attorneys who appear before them. <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991) (federal courts have inherent power to sanction bad faith conduct falling outside Rule 11 or 28 U.S.C. §1927); <u>Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)</u>, 77 F.3d 278, 284-85 (9th Cir. 1996) (bankruptcy courts have inherent power to sanction vexatious conduct presented before the court as recognized in §105(a)). Bankruptcy courts also have express authority under the Bankruptcy Code and

---

[26] <u>See</u> Docket no. 178-3, p. 4:22-25-5:1-23: At debtor's deposition, referring to the $600, $3.12, $211, Mr. Shalaby explained "I told Mr. Nakhuda they were exempted, that he did not have an obligation to turn them over to the trustee ... I don't think those are assets of the estate..."

-24-

Bankruptcy Rules to sanction attorneys. Rule 9011; Local Rule 9011-1; Local Rule 1001-2 adopting Civil Local Rule 11-6(a); In re Nguyen, 447 B.R. 268, 280-81 (9th Cir. B.A.P. 2011) (bankruptcy courts have express authority under Code and Rules to sanction attorneys, including disbarment or suspension from practice; American Bar Association standards are helpful guide for determining appropriate discipline).

**B. Sanctions under Rule 9011**

Rule 9011 is the bankruptcy counterpart of Civil Rule 11. Civil Rule 11 precedents are appropriately considered in interpreting Rule 9011. Marsch v. Marsch (In re Marsch), 36 F.3d 825, 829 (9th Cir. 1994).

Rule 9011(b) and (c) provide, in relevant part,

(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, - ...

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support ... ; and

(4) the denials of factual contentions are warranted on the evidence[.]

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

....

//

-25-

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Rule 9011(c)(3) requires the court to describe the conduct that violates Rule 9011 and explain the basis for the sanction it imposes.

Rule 9011 empowers the court to impose sanctions upon the signer of a paper where the paper is "frivolous" or is filed for an "improper purpose." Townsend v. Holman Consulting Corp., 929 F.2d 1358 (9th Cir. 1990)(en banc).[27] As explained in Townsend, the word "frivolous" does not appear anywhere in the text of the Rule. Rather, it is a shorthand used to denote a filing that is both baseless and made without a reasonable and competent inquiry. Id., at 1361. It also means legally unreasonable or without legal foundation. Zaldivar v. City of Los Angeles, 780 F.2d 823, 829-31 (9th Cir. 1986) (frivolous means that no plausible good faith argument can be made by a competent attorney to the contrary, the rule is designed to eliminate any empty head pure heart justification for patently frivolous arguments).

The standard for frivolousness is an objective one. Conduct of an attorney is measured against a reasonableness standard which consists of a competent attorney admitted to practice before the involved court. See Valley Nat'l Bank v. Needler (In re Grantham Bros.), 922 F.2d 1438, 1442 (9th Cir. 1991) (attorney's collateral attack on his client's agreed sale order was frivolous); Smyth v. City of Oakland (In re Brooks-Hamilton),

---

[27] Nothing in this record suggests Mr. Shalaby had an improper purpose as that phrase is defined. Zaldivar v. City of Los Angeles, 780 F.2d 823, 831-32 (9th Cir. 1986). The court did not consider an improper purpose as affecting the nature or severity of the sanctions in this case.

-26-

271 Fed. Appx. 654, 659 (9th Cir. 2008) (citing <u>Townsend</u>, attorney's position based on materially incorrect view of the law was frivolous); <u>Mars Steel Corp. v. Continental Bank, N.A.</u>, 880 F.2d 928, 934 (7th Cir. 1989) (en banc) (noting that one standard of frivolousness is risibility.)

This standard encompasses a duty to make a reasonable inquiry into both the facts and the law. <u>Townsend</u>, at 1364; <u>Zaldivar</u>, at 831. Whether a reasonable inquiry has been made depends on the circumstances of the case. <u>Zaldivar</u>, at 831.

Under Rule 9011, a court may award an appropriate sanction on its own motion if it first issues an order to show cause describing the specific misconduct. Rule 9011(c)(1)(B). Rule 9011(c)(2) sets forth the available sanctions, and limits monetary sanctions imposed pursuant to a *sua sponte* order to a penalty payable to the court. If a violation of Rule 9011 is found, the court is to craft a sanction that is limited to what is sufficient to deter repetition of the offending conduct or comparable conduct by others similarly situated. Rule 9011(c)(2). <u>Miller v. Cardinale (In re Deville)</u>, 280 B.R. 483 (9th Cir. B.A.P. 2002), aff'd, 361 F.3d 539 (9th Cir. 2004).

**C. Disgorgement under Bankruptcy Code §329**

Bankruptcy Code §329(a) requires an attorney representing a debtor in a bankruptcy case to file a statement regarding the compensation agreed to be paid for services in the case and the source of the compensation. Section 329(b) provides that the court may cancel any such agreement or order the return of any such payment, to the estate or the entity that made it, if it finds it is excessive.

Bankruptcy Code §329 is implemented by Rules 2016 and 2017. Rule 2016(b) provides that every attorney for a debtor, whether or not the attorney applies for compensation, shall file the statement required by §329 of the Code. Rule 2017(a) provides that on the court's own initiative, the court may determine whether any payment by the debtor, made directly or indirectly

-27-

and in contemplation of the filing of a petition, to an attorney for services rendered or to be rendered, is excessive.

Bankruptcy Code §330 sets out the standard by which courts are to determine whether, under §329, the fees exceed the reasonable value of the services. American Law Center PC v. Stanley (In re Jastrem), 253 F.3d 438, 443 (9th Cir. 2001). Section 330(a)(3) states that in determining the amount of reasonable compensation, the court should consider the nature, extent, and value of the services rendered, taking into account all relevant factors, including (A) the time spent on the services; (B) the rates charged for the services; (C) whether the services were necessary or beneficial at the time the services were rendered; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) whether the person demonstrated skill and experience in the bankruptcy field; (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than bankruptcy cases. See Franke v. Tiffany (In re Lewis), 113 F.3d 1040, 1045 (9th Cir. 1997)(noting §329 and Rule 2017 are designed to protect creditors and debtors from overreaching by debtors' attorneys); Hale v. United States Trustee (In re Basham), 208 B.R. 926, 933 (9th Cir. B.A.P. 1997) (disgorgement upheld for incomplete and inaccurate schedules, improperly claimed exemptions, improperly noticed plan confirmation hearing).

**D. Application of Rule 9011 to the Facts of this Case**

To determine whether the positions taken by Mr. Shalaby were frivolous and baseless and whether reasonable and competent inquiry was performed, the court analyzes the underlying substantive law as applied to the facts of this case. This exercise leads to the inexorable conclusion that the positions taken by Mr. Shalaby were frivolous within the meaning of Rule 9011(b). The court notes that Mr. Shalaby's frivolous positions were taken both before the court issued the OSC and again in response to it. This repetition of frivolous arguments further

-28-

supports the court's conclusion that sanctions are warranted. <u>See Ivy v. Kimbrough</u>, 115 F.3d. 550, 553 (8th Cir. 1997) (affirming district court's Civil Rule 11 sanctions, noting district court found response to order to show cause so superficial as to be insulting to the court and the policies underlying Civil Rule 11).

**1. It Was Frivolous to Take the Position that the Debtor's Businesses Could Remain Open after the Chapter 7 Case Was Filed.**

Bankruptcy Code §721 provides "[t]he court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate." Thus, as a preliminary matter, only a chapter 7 trustee may operate a chapter 7 debtor's business in accordance with the limitations in Bankruptcy Code §721.

Despite Mr. Shalaby's claim that this issue was not "black and white," it is in fact precisely that. A reasonable inquiry into the facts and the law would have made it clear that, in the absence of an order permitting the Trustee to operate for a limited period of time, the Sole Proprietorship Laundromats had to be shut down as of the filing date. Even if Mr. Shalaby did not understand this basic rule when he filed the debtor's petition, the Trustee advised him of it before the §341 meeting and Mr. Shalaby should have ensured that they were then immediately closed. When the Trustee learned at the §341 meeting that the debtor was still operating the Sole Proprietorship Laundromats and had been using estate property to do so, he was justifiably incensed and concerned about the risk the estate was exposed to.

Because Mr. Shalaby did not grasp this fundamental provision and the related provisions of the Bankruptcy Code governing chapter 7 practice, the case took a drastic, unnecessary, and expensive turn. The Trustee had to ask the court to order Mr. Shalaby to close the Sole Proprietorship Laundromats

-29-

and turn over the property of the estate that the debtor was
using. Rather than doing the modest amount of research necessary
to learn that this was the appropriate course for the case, Mr.
Shalaby spent the next several months attacking the Turnover
Order. This assault on the Turnover Order, and the many attempts
to obtain the removal of the Trustee, occupied a significant
amount of the Trustee's time and the court's time. A reasonably
competent attorney practicing in this court would not have
pursued this baseless campaign and it is sanctionable to have
done so.

**2. It Was Frivolous to Argue That the Trustee's Objections
to Exemptions Were Not Timely and That No Assets Were
Identified in the Objections.**

Bankruptcy Rule 4003(b)(1) provides that "a party in
interest may file an objection to the list of property claimed as
exempt within 30 days after the meeting of creditors held under
§341(a) is concluded or within 30 days after any amendment to
this list ... is filed, whichever is later." Each of the
iterations of Schedule C was met with a timely objection by the
Trustee.[28] Each Schedule C listed assets Mr. Shalaby claimed as
exempt. Each objection referenced a Schedule C and, when
appropriate, incorporated prior objections. Because of the many
amendments, Mr. Shalaby made the Trustee's task difficult. It
became a moving target or a game of hide and seek.

Mr. Shalaby's argument that the Trustee's objections were
not timely is based, at least in part, on Mr. Shalaby's assertion
that the July Motion - filed July 22 - was late because the last
amendment to Schedule C was filed on June 12. Docket no. 147, p.
3. Mr. Shalaby's blithe assertion that the objections were

_____

[28] See Schedule C at Docket no. 15 filed April 10; Schedule
C at Docket no. 46 filed April 25; Schedule C at Docket no. 58
filed May 6; Objection to no. 58 filed May 7 at Docket no. 61;
Schedule C at Docket no. 91 filed June 2; Objection to no. 91
filed June 3 at Docket no. 94; Schedule C at Docket no. 101 filed
June 12; and Objection to no. 101 filed July 10 at Docket no.
118.

-30-

meaningless because a motion rather than an objection was required has no basis. He provided no authority for this position because there is none. Section 522 says "unless a party in interest objects" and Rule 4003(b) says the trustee or any creditor "may file objections." See Canino v. Bleau (In re Canino), 185 B.R. 584, 592 (9th Cir. B.A.P. 1995) (there is either an objection or no objection, a challenge to the validity of an exemption must only be explicit).

Each of the Trustee's objections was filed in compliance with Rule 4003(b)(1) within 30 days after an amended Schedule C was filed. The Trustee's objections gave Mr. Shalaby ample notice of the facts and the law on which the Trustee relied in making the objections. Mr. Shalaby had notice and an opportunity for a hearing. His position that a "motion" is required has no support in existing law and does not amount to a reasonable argument for its change.

Mr. Shalaby's other argument (raised in response to the OSC) is premised on his claim that the Trustee had not objected at all to the claimed exemptions in Schedule C at Docket no. 101 because the objection at Docket no. 118 mistakenly referred to California Code of Civil Procedure §704.060 and bank proceeds rather than §706.050 and wages and the July Motion referred to a different list of assets. Docket no. 176, p. 7-9. This argument is disingenuous at best, and dishonest at worst. Mr. Shalaby was well aware of what the issues were and the grounds for the Trustee's objections.[29] There is no unfairness or surprise here in the way the objections were presented or the development of the record on which the court relied when it ruled at the October 1 hearing. Even though there were many amendments to Schedules B and C, the legal and factual issues did not change significantly. It was always apparent that there were four primary questions:

---

[29] In fact, the objection at Docket no. 118 incorporated the objection at Docket no. 94 which incorporated the objection at Docket no. 61. Thus, it was clear that the Trustee objected to exempting cash as a tool of the trade, the Borismetrics account receivable as wages, and reducing the value of assets under the community property/property of the estate misconception.

-31-

Mr. Shalaby's interpretation of (1) California's exemption scheme for tangible personal property (tools of the trade) regarding the checking account and cash; (2) California's exemption scheme for wages regarding the account receivable owed by Borismetrics; (3) Bankruptcy Code §541(a)(2) regarding the propriety of claiming a the spouse's share of community property was not property of the estate; and (4) the meaning of "inconsequential value" in §542(a) and how this affects the obligation to turn over assets that are, by §541(a)'s definition, property of the estate.

The debtor had an opportunity to present evidence and argument at the October 1 hearing on each issue. Following that hearing, the court ruled in the Trustee's favor because the Trustee had sustained his burden of proof as to each objection. On this record, it is apparent that Mr. Shalaby did not undertake a reasonable investigation of the facts or research controlling law. His pursuit of this frivolous argument warrants sanctions under Rule 9011.

**3. It Was Frivolous to Claim that the Debtor's Non-filing Spouse's Share of Community Property Was Not Property of the Estate.**

Bankruptcy Code §541(a) provides that the commencement of a case creates an estate comprised of (1) all legal or equitable interests of the debtor in property as of the commencement of the case, and (2) all interests of the debtor and the debtor's spouse in community property as of the commencement of the case. For purposes of §541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate. <u>Dumas v. Mantle (In re Mantle)</u>, 153 F.3d 1082 (9th Cir. 1998) (relying on <u>In re Miller</u>, 167 B.R. 202 (Bankr. C.D. Cal. 1994)).

Throughout this case, Mr. Shalaby has taken the position that the value of the property the Trustee sought to recover was to reduced by half based on his view that the debtor's spouse's community property "share" was not property of the estate. At no point did he address §541(a)(2) or even appear to be aware of its

-32-

existence. The only law Mr. Shalaby referred in support of his position was California Family Code §760. That section does not advance Mr. Shalaby's cause. Under California Family Code §760, there is a rebuttable presumption that all property acquired during marriage is community property. The presumption must be rebutted with evidence, not belief or opinion. Mr. Shalaby had many chances to rebut this presumption but never provided any evidence to support his claim or any analysis of the issue; he simply repeated his "belief" in his position. That alone was an objectively unreasonable response to the Trustee's objections.[30]

In his response to the OSC, Mr. Shalaby merely argued that the "spouse's interest vested" in the Borismetrics account receivable pre-petition and he did not "believe" it was "proper" to treat these funds as community property funds because they were now her "separate community property share that vested" six months pre-petition. Docket no. 176, p. 8. This convoluted statement suggests Mr. Shalaby believes community property somehow transforms itself into separate property after passage of time or upon the filing of a bankruptcy case. He offered no legal analysis of this position. He merely asserted it was "proper." This was frivolous. It shows he did undertake reasonable steps to understand the facts or the law. It was not objectively reasonable to take this position and it is additionally sanctionable to have repeated it.

**4. It Was Frivolous to Claim that the Account Receivable Was Exempt as Earnings Paid by an Employer.**

Under California Code of Civil Procedure §706.050 a debtor may exempt "disposable earnings" that are "subject to levy under an earnings withholding order." An earnings withholding order can only issue to an employer. California Code of Civil Procedure

---

[30] The court also notes the debtor had testified at the §341 meeting that he had been married for 28 years and his spouse was a "homemaker." Docket no. 178-1, p. 3. Mr. Shalaby never offered evidence contradicting or qualifying this.

-33-

§706.108. "Earnings" means compensation payable by an employer to an employee for personal services." California Code of Civil Procedure §706.011(b).

The first several versions of the schedules listed the money owed by Borismetrics as an account receivable. The debtor testified under oath at the §341 meeting and in his deposition that he was a consultant for Borismetrics, not an employee, and was issued a form 1099 by this company. It was only when the Trustee sought information about the account receivable – which the debtor had a duty to provide but which Mr. Shalaby resisted – that Mr. Shalaby "recharacterized" it as exemptible wages. In the face of the debtor's previous admissions made under oath, the belated recharacterization failed. On this record, it was objectively unreasonable to attempt to evade the Trustee's effort to collect this account receivable by claiming it was exemptible wages.

In response to the OSC, Mr. Shalaby tried to reargue the issue and claimed he anticipated a trial on this issue and did not "recall" the court ever ruling on whether the Borismetrics payments were exemptible. However, he was present when the court did rule at the October 1 hearing sustaining the Trustee's objections, he received the order signed days after the hearing, and did not appeal from the order.[31] His defense of the OSC on this issue is in itself frivolous.

**5. It Was Frivolous to Take the Position That a Bank Account Was Exempt as a Tool of the Trade.**

California Code of Civil Procedure §704.060(a)(1) provides that tools, implements, instruments, and other personal property are exempt to the extent that the aggregate equity therein does not exceed $7,625, if reasonably necessary to and actually used by the judgment debtor in the exercise of the trade, business, or profession by which the judgment debtor earns a livelihood.

---

[31] At the hearing, he claimed not to have received the October 2 order. He later recanted this claim.

-34-

Mr. Shalaby insisted that this provision allowed the debtor to exempt funds held in a bank account. Mr. Shalaby's interpretation was apparently based on the fact that the debtor ran a business and thus needed money.

In C.F. Neilsen, Inc. v. Stern, 11 Cal.App.4th Supp. 22 (1992) the judgment debtor argued that funds in his business bank account should be exempted from levy under Cal. Code Civ. Proc. §704.060(a)(1). Explaining that its task was to ascertain the legislative intent to effectuate the purpose of the law, the court rejected this argument. In order to determine the legislative intent, it gave the words of the statute their usual and ordinary meaning. The court concluded that "the usual and ordinary meaning of the [section's] language and the relevant case law pertaining to personal property exemptions indicate subdivisions (a)(1) and (a)(3) of Code of Civil Procedure §704.060 were intended to protect only those *tools, equipment*, *and other items of tangible property* which are reasonably necessary and actually used by a judgment debtor in pursuing his livelihood." Id., at 25 (emphasis added). See also Kono v. Meeker, 196 Cal.App.4th 81 (2011) (explaining history of tools of trade exemption, collecting cases).

Mr. Shalaby claimed to have researched this question but provided no case law supporting his position that funds in a bank account were exemptible as a tool of the trade. He also failed to address why C.F. Neilsen was not good law other than to insist he could not locate it – despite the fact that he had cited it previously – or that it was not binding precedent. Because this court applies California law to this exemption question, C.F. Neilsen is persuasive authority. Mr. Shalaby's claim to have done research rings hollow.[32] He offered nothing to support his position because there is nothing. His claim of exemption in a bank account as a tool of the trade was frivolous.

---

[32] It is also well-established that a bank account is not tangible personal property. See Bank of Marin v. England, 385 U.S. 99, 101 (1966) (noting that relationship of bank and depositor is that of debtor and creditor, founded upon contract).

-35-

**6. It Was Frivolous to Collaterally Attack the Sale Order.**

On his Schedules A and D, the debtor valued his house at $433,00 and stated it was encumbered with liens totaling approximately $380,000. Docket no. 15. On June 11, 2014, the Trustee filed an Ex Parte Application to hire a real estate broker, attaching a proposed listing agreement for $539,000. Docket nos. 99, 102. On June 12, 2014, Mr. Shalaby filed amended Schedules A and C, increasing the house value to $489,500 and increasing the homestead exemption to $100,000. Docket no. 101. This amended Schedule A said this was done in order to match the value shown in the Trustee's listing agreement with the broker. These amendments appear to have been an effort to keep the Trustee from trying to sell the house.[33]

On July 1, 2014, the Trustee filed a motion seeking court authority to sell the estate's interest in the non-exempt equity in the house to the debtor. Docket nos. 116-117. The motion explained that after inspecting the house, the broker recommended listing it for sale at $539,000 and advised that it could sell for $550,000 with costs of sale of approximately $27,000. Based on this, the Trustee and the debtor - with Mr. Shalaby negotiating on his behalf - entered into an agreement by which the debtor agreed to purchase the non-exempt equity from the estate. See Docket no. 146-1, p. 4 (June 17, 2014 email to Trustee's counsel offering to pay $25,000, parties later agreed to $30,000). After the notice period ran, the court entered the Sale Order and the debtor paid the $30,000 to the Trustee.

Despite the fact that (1) the Trustee had not objected to the $100,000 homestead exemption; (2) the Sale Order was based on an agreement with the debtor; (3) the Sale Order was final and had not been appealed; and (4) the Sale Order had been fully performed by the debtor, Mr. Shalaby tried to reverse it in his

---

[33] Mr. Shalaby also filed a request for a hearing on the Trustee's application to employ this real estate broker, claiming the request to sell the house was improper and he needed time to file an opposition. Docket no. 100.

-36-

opposition to the July Motion. Docket no. 143, p. 3. Mr. Shalaby claimed the Trustee had merely "speculated" that the value of the house was between $539,000 and $550,000 and Mr. Shalaby had, well after the fact, obtained an appraisal that valued it at $495,000. From this he claimed the most the Trustee was entitled to was $6,000 ($495,000 – $389,000 – $100,000 = $6,000). In the alternative, he argued that because the Trustee had not objected to the $100,000 homestead exemption, the estate was not entitled to *any* of the $30,000 non-exempt equity and the court should order the Trustee to return it plus the $600 that had been paid for the belated appraisal. At the October 1 hearing, the court dismissed these arguments as frivolous and procedurally improper.

Ignoring that he had been told in no uncertain terms that there was no basis – procedurally or substantively – for this effort to vacate the Sale Order, in his response to the OSC, Mr. Shalaby justified his actions by saying he held a "good faith belief" that the Trustee was not allowed to collect money from a debtor based on an "artificially high valuation" and no one had given *him* any authority showing he could not attack the Sale Order and "petition for review" of the valuation underlying the Sale Order. "Without presentation of such authority, at this time this counsel believes in good faith that the debtor's rights are as explained above." Docket no. 176, p. 11.[34]

The attack on the Sale Order was frivolous when it was first made in response to the July Motion and it is frivolous and thus sanctionable now. Measured objectively against a reasonableness standard which consists of a competent attorney admitted to practice before this court, this "good faith belief" does not insulate Mr. Shalaby from sanctions under Rule 9011. See Valley Nat'l Bank v. Needler (In re Grantham Bros.), 922 F.2d 1438, 1442 (9th Cir. 1991) (it was frivolous for attorney to file

---

[34] See Burnette v. Lockheed Missiles & Space Co., Inc., 72 F.3d 766 (9th Cir. 1995) (affirming district court's finding that Rule 11 sanctions were appropriate based on plaintiff's attorney's "astonishing argument" that it was defendants' burden to determine sufficiency of plaintiff's federal claim before removing it to district court).

-37-

complaint containing collateral attack on court's sale order
which his client had agreed to and for which client had not
sought review, reconsideration or stay; collateral attack had no
basis in law or fact and was sanctionable under Rule 9011).

**7. It Was Frivolous to Claim That Exemptions Were
Automatic Based Solely on the Values Asserted in the
Schedules.**

Bankruptcy Code §542(a) provides in relevant part,

> [A]n entity, ... in possession, custody, or control, during
> the case, of property that the trustee may use, sell, or
> lease ..., or that the debtor may exempt under section 522
> ..., shall deliver to the trustee, and account for, such
> property or the value of such property, unless such property
> is of inconsequential value or benefit to the estate.

Relying on the last phrase of this sentence in §542(a), Mr.
Shalaby took the position that once an asset was listed on
Schedule C, it was - by fiat - removed from the property of the
estate - and by extension not subject to turn over - if it
appeared to him to have inconsequential value based on the
information he had put in the schedules. Even in response to the
OSC, he claimed "[t]o date, no authority has been presented to
this counsel to advise him that a noticed motion is required to
make a finding of 'inconsequential value'." Docket no. 176, p.
12-13.

At no point did Mr. Shalaby cite any case law interpreting
§542(a) or acknowledge the other provisions of the Bankruptcy
Code that made his interpretation clearly invalid. His approach
was objectively unreasonable. See United Sav. Ass'n of Texas v.
Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371
(1988) (interpreting another section of the Bankruptcy Code,
explaining statutory construction is a holistic endeavor; a
provision that may seem ambiguous in isolation is often clarified
by the remainder of the statutory scheme; court looks to the
entire statutory scheme rather than simply examining the text at
issue).

Based on this misinterpretation, he took the position that

-38-

the Sole-Proprietorship Laundromats and the cash were automatically removed from the estate, and never brought under the control of the Trustee and thus debtor could continue operating them and using the money. These are patently incorrect views of the law which a moderate amount of uncomplicated research would have shown. To make matters worse, the record shows he was repeatedly told by the Trustee, the Trustee's counsel, the counsel for the United States Trustee, and the court that his position had no merit. Mr. Shalaby's position would protect from scrutiny any asset for which a debtor states a low value in its schedules and would effectively delete a significant number of sections from the Bankruptcy Code.

It is a basic premise that filing a case creates an estate. §541(a). The estate is placed under the control of a trustee, who is responsible for managing the liquidation of the estate's assets and distribution of the proceeds. §704(a)(1). Section 704 outlines a trustee's duties. Section 521, in turn, imposes coextensive duties on a chapter 7 debtor. Section 521(a)(3) provides that the debtor *shall cooperate* with the trustee as necessary to enable the trustee to perform the trustee's duties under this title. Section 521(a)(4) provides that the debtor *shall surrender* to the trustee all property of the estate and any recorded information including books, documents, records, papers relating to property of the estate.

Section 522 authorizes a debtor to exempt certain kinds of property from the estate. §522(b)(1). Section 522(b)(1) provides that "notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection."

Section 522(*l*) states the procedure for claiming exemptions and for objecting to claimed exemptions as follows: "The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section ... Unless a party in interest objects, the property claimed as exempt on such list is exempt."

As previously explained, Rule 4003 implements §522. Rule

-39-

4003(b) imposes a 30-day deadline for a party in interest to file an objection to the list of property claimed as exempt. Rule 4003(c) provides that in any hearing under this Rule, the objecting party has the burden of proving that the exemptions are not properly claimed and, after hearing on notice, the court shall determine the issues presented by the objections. During any 30-day period after a schedule C is filed, the language of §522 and Rule 4003 make it clear that the property listed on Schedule C remains property of the estate.

If this starting point in the Bankruptcy Code itself was insufficient, at various points, Mr. Shalaby insisted he had thoroughly researched the relevant law. However, this claim is contradicted by the fact that a five minute review of one widely available treatise would have revealed the following:

> Property subject to exemption is part of the property of the estate and remains in the estate unless claimed exempt and *until the exemption is allowed*. See §2:1. Allowance typically means that no objections were filed timely or that any objections were overruled. See §7:5, and see, e.g., In re Miller, 501 B.R. 266 (Bankr. E.D. Pa. 2013) (annuity claimed as exempt was in the bankruptcy estate until time to object to exemptions expired).

Bankr. Exemption Manual §7:1 (2012 ed.) (emphasis added).

If this was still unsettled or unconvincing, a brief review of current relevant authority would have further highlighted the fallacy of Mr. Shalaby's position. See Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi), 473 B.R. 802, 809 (D. Nev. 2012) aff'd, 764 F.3d 1168 (9th Cir. 2014) (explaining a debtor only "claims" an exemption and, if there is an objection, the court determines the issues; under §522(*l*) the property only passes to the debtor upon expiration of the time to object).

If Mr. Shalaby did not immediately grasp the consequences of filing a chapter 7 case, or the meaning of the Turnover Order, or the effect of a pending objection to a claimed exemption, additional case law explaining these issues was readily available. Further light effort to research the question would have unearthed the following helpful explanation:

-40-

A turnover order serves to enforce the rights of a trustee under 11 U.S.C. § 542 ... As a practical matter, trustees will not usually seek a turnover of fully exempt property from the debtors. Nonetheless, by its text, section 542 allows the turnover of all estate property, including property that the trustee will administer and property that debtors may prospectively exempt. Essentially, a turnover order does not determine the exemptibility of an asset, but merely places such property into the possession of the trustee until such time as its disposition is finally resolved.

In re McDonald, 402 B.R. 568, 570-71 (Bankr. W.D.N.Y. 2009).[35]

A reasonably competent attorney would have thus learned from the above explanations, would have grasped the fact that controlling authority contradicted the positions he was taking, and altered course accordingly. It is elementary - and competent counsel representing any chapter 7 debtor is expected to understand - that the debtor's claims of exemption are not automatic and even property that may appear to have an inconsequential value is subject to turnover. Pending a ruling on the objections, these assets remain property of the estate and, if there is a turnover order, it must be obeyed. Mr. Shalaby's position that debtor did not have to comply with the Turnover Order based on his misunderstanding of the exemption procedure and the concept of property of the estate was, accordingly, frivolous.[36] Mr. Shalaby had time to consider the Trustee's

_____

[35] The court notes that a Westlaw search for "'turnover order' /p 'exemptions'" leads to a list of cases the first of which is In re Hernandez, 483 B.R. 713, 725 (9th Cir. B.A.P. 2012) (collecting cases, explaining that claimed exempt property must be initially regarded as property of the estate); see also, In re Burgio, 441 B.R. 218 (W.D.N.Y. 2010) (illustrating how a court will resolve factual issues involving a debtor's request for an order compelling abandonment based on a claim that an asset had inconsequential value and a ch. 7 trustee's competing request for turnover of the asset based on a claim that the potentially exempt asset had more than inconsequential value).

[36] Mr. Shalaby also lacked an understanding of the concept of abandonment of property of inconsequential value under Bankruptcy Code §554 and the procedure for obtaining an order for abandonment. See Docket no. 68 (Ex Parte Application for Order Confirming Abandonment of Fulton Street Laundromat (continued)

-41-

position, starting as early as the first week of April 2014 when he communicated with the Trustee and again at the §341 meeting a few weeks later. He thus could have corrected course, rather than blindly insisting, based only on his "belief" that "it was not so black and white" when in fact it was. See In re Chicago Midwest Donut, Inc., 82 B.R. 943, 949 (Bankr. N.D. Ill. 1988) (notwithstanding attorney's sincere belief in merits of client's position, attorney has a duty to ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief or defense; ignorance of law does not excuse violation of Rule 11). To make matters worse, he repeatedly sought the removal of the Trustee, a campaign premised on his stubborn refusal to recognize the primary rules governing a chapter 7 case and accept the fact that the Trustee was merely performing his duties as the Bankruptcy Code requires.[37]

**E. Appropriate Sanction for Violation of Rule 9011**

Rule 9011(c)(2) provides that a sanction imposed for violation of this Rule shall be limited to what is sufficient to deter repetition of the sanctionable conduct. The sanction may consist of directives of a nonmonetary nature, or an order to pay a penalty into court. The court may consult the American Bar Association standards in devising an appropriate sanction. In re Nguyen, 447 B.R. 268, 277-78 (9th Cir. B.A.P. 2011)(en banc) (modifying holding in Peugeot v. U.S. Trustee (In re Crayton), 192 B.R. 970 (9th Cir. B.A.P. 1996), noting American Bar Association criteria were (1) whether the duty violated was to a client, the public, the legal system or the profession; (2) whether the attorney acted intentionally, knowingly or negligently; (3) the seriousness of the actual or potential

_____

in which he claims there was "abandonment by stipulation for restoration of possession to owner" and "abandonment in effect" based on the Trustee's stipulation to return possession of the leased premises to the landlord).

[37] Mr. Shalaby's motion for judicial recusal is similar to his efforts to remove the Trustee.

-42-

injury caused by the attorney's misconduct; and (4) the existence
of aggravating and mitigating factors).

In this case, the court finds that Mr. Shalaby violated
duties owed to his client, the public, and the legal system. As
explained previously, Mr. Shalaby's conduct in this case was, at
a minimum, negligent and he caused significant harm to the estate
and the legal system, and most likely his client. The court is
not aware of any mitigating factors despite Mr. Shalaby's vague
references to a "personal matter" he wished not to disclose on
the record.[38] Mr. Shalaby's response to the OSC is in many
respects an aggravating factor. Each of his fleeting moments of
candor was followed by a renewed effort to advance previous
frivolous arguments.

Accordingly, the court finds that the appropriate sanction,
which will serve its deterrent purpose, will be for Mr. Shalaby
to pay a penalty of $8,000 into court, $4,000 of which is to be
paid within 60 days of entry of the order on this Memorandum
Decision and $4,000 of which is to be paid within 90 days
thereafter. In addition, commencing immediately, except for cases
in which he has already appeared as counsel of record, Mr.
Shalaby is suspended from the practice of law in the bankruptcy
courts for the Northern District of California until he has
completed 24 hours of continuing legal education in bankruptcy
law plus 3 hours of continuing legal education in ethics. Until
he files a declaration in this case attesting to the fact that he
has completed these hours of continuing legal education, his
privilege to practice in the bankruptcy courts for the Northern
District of California will remain suspended. The court will also
transmit a copy of this Memorandum Decision to the district
court's Standing Committee on Professional Conduct for its review
and to the United States Trustee for its review.

It is clear from this record that Mr. Shalaby's handling of
this case cost the estate and its creditors because of the

---

[38] At several points, Mr. Shalaby tried to explain his
conduct as a "personal matter." The explanation was unclear. See
Docket no. 84-1, Ex. D, p. 9-10; Docket no. 176, p. 4:6-12.

-43-

objectively unreasonable positions Mr. Shalaby took. Because one of the functions of Rule 9011 is to protect the court's resources, it must be pointed out that Mr. Shalaby's handling of this case also consumed an inordinate amount of the court's limited resources. The sanction awarded here does not compensate the estate or the creditors for the harm caused by Mr. Shalaby's handling of this case but it will serve the appropriate purpose within the confines of Rule 9011. <u>Miller v. Cardinale (In re Deville)</u>, 280 B.R. 483 (9th Cir. B.A.P. 2002), aff'd, 361 F.3d 539 (9th Cir. 2004).

**F. Application of Bankruptcy Code §329 to the Facts of this Case**

The OSC gave notice to Mr. Shalaby that the court was considering Bankruptcy Code §329 as a basis for relief in this matter. Mr. Shalaby was given an opportunity to argue that his fees were reasonable and not subject to disgorgement.[39]

Mr. Shalaby argues that the court cannot order disgorgement of the fees he was paid because the court did not identify a basis for disgorgement in the OSC. This is incorrect. The OSC referred to §329. The text of §329 makes it obvious that the concern was that $4,000 fee was excessive in comparison to the value of the services rendered, especially here where the OSC gave a detailed list of the matters the court was concerned with. A brief review of any widely available treatise would also have shown what the relevant inquiry was. The bankruptcy court's authority to examine the reasonableness of attorneys' fees and to disgorge fees that the court deems excessive has been part of bankruptcy practice for more than a hundred years. <u>In re Wood and Henderson</u>, 210 U.S. 246 (1908) (affirming bankruptcy court's authority to examine reasonableness of attorneys' fees under Bankruptcy Act §60d, §329's predecessor).

Mr. Shalaby also argues that disgorgement is not available because the OSC focused only on what the court saw as the "perceived error, unawareness, and negligence of counsel" and

---

[39] According to his Rule 2016(b) Statements, he was paid $4000 to handle this case. Docket no. 9, Docket no. 15, p. 45.

-44-

because he incurred fees that were unrelated to the issues raised in the OSC. This argument is also frivolous. The question of reasonableness under Bankruptcy Code §329 is not limited to the seven issues described in the OSC and it is exactly his error, unawareness and negligence that forms the basis for relief under §329. The OSC does not insulate Mr. Shalaby from disgorgement pursuant to §329.

In defense of the OSC, Mr. Shalaby also argues that the value of his services rendered from March 2014 through April 25, 2014 exceeded $11,261.25. See Docket no. 220 (declaration attaching an itemized billing statement for $11,261.25). From this, he argues that the "value" of his services "vastly exceeds" what the $4,000 he was paid by the debtor so in his "firm opinion" the court may not order any disgorgement. Even a cursory review of the relevant Code sections and the established case law would have shown that more is required to defend against a threat of disgorgement under §329 than this "firm opinion." The question is not how much time he spent on the case and what he believes his theoretical unpaid bill might be. The question is whether the $4,000 he was paid was excessive for what he accomplished on behalf of the debtor in the circumstances of this case.

The court judges the value of his services under the criteria in Bankruptcy Code §330(a). The factors in §330(a)(3), especially (C) (whether the services were necessary or beneficial), and (E) (skill and experience in the bankruptcy field) are particularly important here. First, as the issues listed in the OSC and the above discussion show, his services were not necessary or beneficial to the debtor and they were costly and detrimental for the estate. Second, it is apparent that Mr. Shalaby lacked skill and experience in this field; he lacked competence in the relevant substantive and procedural areas required to handle this case.

His handling of this case showed he did not understand the implications of filing a chapter 7 case and did not understand the basic concepts, including the debtor's duties, the Trustee's duties, the nature of a bankruptcy estate, the duty to turn over assets, the rules regarding abandonment, the concept of rejection

-45-

of an executory lease, or the importance of administrative rent.[40]
If he were competent, multiple amendments to the schedules would
not have been necessary and he would have known he had to have
the debtor sign them, as the applicable ECF rules require. He
also approached every area of dispute by claiming his "good faith
belief" in whatever position he took was a sufficient basis on
which to proceed. To make this approach even more problematic, he
appeared to believe that once he had announced his belief or
opinion, it was up to the Trustee or the court to prove him
wrong. This was a patently frivolous approach.

## G. Appropriate Remedy under Bankruptcy Code §329

If Mr. Shalaby had not taken the positions he took regarding
the Turnover Order and had not pursued the baseless factual and
legal positions on the claimed exemptions, it is more than likely
that neither the Trustee nor the U.S. Trustee would have deposed
the debtor and his discharge would not have been delayed. If Mr.
Shalaby had understood what filing a chapter 7 case meant, the
debtor may have preferred to file a chapter 11 or chapter 13
case. The trajectory of this case was entirely unnecessary and
the estate and its creditors, and possibly the debtor, were
harmed by the path it took. The $4,000 Mr. Shalaby was paid is
the epitome of an excessive and unreasonable fee. As a
consequence, Mr. Shalaby is to disgorge $4,000 to the Trustee
within 30 days of the date of entry of the order on this
Memorandum Decision.

## H. The Electronic Case Filing Procedures Violation

The OSC stated that the court was considering disgorgement
and sanctions based on Mr. Shalaby's admitted failure to obtain
debtor's signature on documents filed with the court and noted

---

[40] The papers he filed also indicated that he did not
understand the difference between a declaration (facts) and a
memorandum of law (argument). In addition, he does not appear to
understand the concept of the burden of proof or what a request
for judicial notice is and when it is appropriate to use one and
what it is appropriate to use one for.

-46-

that he had admitted that it was his practice to not have his debtor clients sign any of the papers filed on their behalf.

Paragraphs 8 and 9 of this court's Electronic Case Filing Procedures[41] provide, in relevant part,

> A Registered Participant who electronically files a document ... shall be deemed to have certified under penalty of perjury that he or she has personally reviewed the document[.]
>
> ....
>
> Pleadings ... that are required to be verified ... and all affidavits or other pleadings in which a person verifies, certifies, affirms or swears under oath or penalty of perjury concerning the truth of matters set forth in that pleading or document ('Verified Pleading') may be filed electronically ... The electronic filing of a Verified Pleading constitutes a representation by the Registered Participant ... that the Registered Participant has in his or her possession at the time of filing the fully executed original, signed pleading/document.

At the debtor's deposition, Mr. Shalaby admitted that he had never asked the debtor to sign any of the papers filed in this case. Docket no. 124-2, Ex. A, p. 17-18. He also admitted this was his practice in all his cases. He also admitted that he had not personally prepared or reviewed the debtor's original petition before it was filed, a separate violation. Docket no. 178-1, Ex. B, p. 30.

In his response to the OSC, Mr. Shalaby professed confusion regarding this court's ECF rules and claimed he was unable to locate them on the court's website. However, he claimed familiarity with the district court's ECF rules which he said provided that an e-filed document shall be deemed signed regardless of the existence of a physical signature. Docket no. 176, p. 16. First, this court's procedures govern, not the district court's. Second, the procedures are readily available on

---

[41] Available on the CANB website through this path: - ECF button - CM/ECF Reference Desk - ECF Rules and Procedures - Electronic Case Filing Procedures (Effective 2/1/2010) - paragraph 8 (Signature and Verified Pleadings); paragraph 9 (Retention Requirements).

-47-

the court's website. Mr. Shalaby is required to know the rules and abide by them if he is going to practice here.

The appropriate remedy for this flagrant violation is to revoke Mr. Shalaby's e-filing privileges until he has participated in the training provided by the clerk's office. Therefore, commencing with the date the order on this Memorandum Decision is entered, Mr. Shalaby's privileges are suspended and the clerk's office will be directed to restrict his access accordingly. Until he files a declaration in this case attesting to the fact that he has completed ECF retraining, his privilege to be an e-filer will remain suspended.

**V. CONCLUSION**

In light of the above, (1) based on Bankruptcy Code §329, Mr. Shalaby shall disgorge $4,000 to the Trustee within 30 days of entry of the order on this Memorandum Decision; (2) based on violation of Rule 9011(b), Mr. Shalaby shall pay $8,000 to the court, $4,000 of which is to be paid within 60 days of entry of the order on this Memorandum Decision and $4,000 of which is to be paid within 90 days of entry of the order on this Memorandum Decision; (3) except for cases in which he has already appeared as counsel of record, commencing immediately, Mr. Shalaby is suspended from the practice of law in the bankruptcy courts for the Northern District of California until he has completed 24 hours of continuing legal education in bankruptcy law plus 3 hours of continuing legal education in ethics; (4) commencing immediately, Mr. Shalaby's e-filing privileges are suspended until he has taken the ECF training provided by the clerk's office. The court will also transmit a copy of this Memorandum Decision to the district court's Standing Committee on Professional Conduct and transmit a copy to the United States Trustee for their review.

* * * END OF MEMORANDUM DECISION * * *

-48-

1 Court service list:

2 None required.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-49-